HENDERSON COMPANY *v.* WEBSTER.

Opinion delivered December 3, 1928.

*W. J. Goodwin,* for appellant.

*T. O. Abbott,* for appellee.

MEHAFFY, J. The Henderson Company is engaged in the manufacture of casinghead gasoline from natural gas, in Union County, Arkansas.

The appellee, N. L. Webster, is the executor of the estate of E. M. Telle, who was a broker, handling gasoline, oil and its by-products, purchasing the same in the

local field, and selling to various persons over the States. Telle committed suicide in Little Rock, on the 12th day of January, 1927. Prior to that time he had purchased large quantities of gasoline from appellant over a period of years, and at the time of his death he was indebted to appellant in the sum of approximately $12,000. Appellant was continuing to sell to him on credit, and, a day or two before Telle's death, the Henderson Company received an order for a certain lot of casinghead gasoline.

On the day of Telle's death, Webster, who operated Telle's office, ordered some gasoline from the Henderson Company. It was loaded out and delivered, and the Henderson Company gave the railroad company a stop order. The Telle Company had not only received the gasoline, but had unloaded a part of it, and, after receiving the order to stop the shipment, the railroad company went to get the car, and the Telle Company replaced a portion of the gasoline with a cheaper grade, and permitted the car to go back to the Henderson Company. The Henderson Company presented its account to the administrator for something more than $12,000, but the account presented did not include the price of the gasoline in the car delivered the day of Telle's death.

The administrator brought suit for the car on the ground that the gasoline had been delivered to the Telle Company, and retaken by the Henderson Company without authority. The case was tried in the circuit court, and a jury returned a verdict for $883.58 against the appellant. The case is here on appeal.

The undisputed proof shows that Telle died on January 12, 1927, but that the news of his death did not reach El Dorado until about 5 o'clock on that day. About 8 o'clock the agent of the Henderson, Company went to Telle's refinery, and found the car in litigation on Telle's loading track, with approximately one-half of its contents unloaded. Henderson Company's agent instructed some of the men at the plant not to unload any more of the contents of the car. But, in order to blend another car of gasoline for which Telle's plant had an order, a

product from Telle's plant was run into the Henderson Company car, and the railroad company, acting under orders of the Henderson Company, removed the car with its contents from Telle's plant, and this suit is to recover from the appellant the value of the contents of said car. The railroad company went to Telle's track the next morning after Telle's death and removed the car back to the appellant company's track. The bill of lading had never been delivered.

The evidence does not show the exact date that the car was put on the Telle track. That is, does not show the hour; it was on the 12th day of January, probably about 4:30 o'clock. This was before news of Telle's death had been received.

After the evidence was introduced, appellant requested the court to instruct the jury to return a verdict for the defendant. This request was refused, and proper exceptions saved. The court, however, instructed the jury that the burden of proof was upon appellee, and that, if the jury found from a preponderance of the evidence that the appellant sold and delivered to Telle, during his lifetime, a carload of casinghead gasoline, and that it was delivered to Telle during his lifetime, and that the delivery had already been made before his death, and that he was due and indebted to the Henderson Company for said gasoline before his death, it should then find for the plaintiff, unless the jury found there had been an accord and satisfaction of the matter subsequent to the sale and delivery.

It will be seen from this instruction, the substance of which is set out above, that the jury could not find a verdict for appellee unless it found that the car had been delivered to Telle before his death. And the jury was further instructed, in substance, that, unless they did find from a preponderance of the evidence that the car was sold and delivered during Telle's lifetime, their verdict should be for appellant.

The court also instructed the jury specifically on the question of accord and satisfaction. It is true that the

court instructed the jury that a delivery to the carrier was a delivery to the consignee, but still they must find that this was done in the lifetime of Telle, and the jury could not find for appellee unless it found there was an actual delivery of the car during Telle's lifetime.

As we have already said, the proof shows that it was delivered to appellee, or to Telle, and about one-half of the contents removed before the railroad company notified the Telle Company about any order of stoppage *in transitu*.

The first contention of appellant is that a verdict should have been instructed for it, because of its right to stoppage *in transitu*.

"The right of stoppage *in transitu* may be exercised by a seller at any time because of the insolvency of the buyer before the goods came to the possession of the buyer. Any effort to stop after they came to the possession of the buyer would not be stoppage *in transitu*, and a retaking of the goods after they had been delivered to the buyer, of course, would not be the exercise of the right of stoppage *in transitu*. It has been said that the right of stoppage *in transitu* is an extension of the right to a lien for the price anterior to the actual delivery, which lien the seller can enforce by seizing the goods in the possession of a carrier at any time prior to actual delivery into the possession of the buyer." *Wills* v. *Glenwood Cotton Mills*, 200 Fed. 301.

"The death of the buyer during the transit, if his estate is insolvent, does not terminate the seller's right of stoppage, but, if the goods are delivered by the carrier to the administrator, the right is thereby terminated, because the transit is duly ended by such delivery. Where the goods sold on credit are in the custody of a warehouseman or wharfinger, such custody is looked on as of the nature of a transit, and the seller's right to stop delivery to the buyer has been upheld." 24 R. C. L. 131.

The proof in this case shows that the goods were delivered during the lifetime of the buyer, and the jury was directed to find against the appellee, unless the proof

showed that they were delivered during his lifetime. But, if the goods had been delivered to the administrator, the right would have been terminated, and could not thereafter be exercised by the seller, because, as the authorities say, the transit is duly ended by such delivery. These goods were not in the custody of a warehouseman or wharfinger. They were in the custody of the buyer himself, delivered to him, and the car partly unloaded. It is also true that, while insolvency gives the right of stoppage *in transitu,* the insolvency of the buyer must arise after the sale, or, if it existed at the time of the sale, it must appear that it was not discovered until afterwards by the seller.

The evidence in this case conclusively shows that the seller knew about the insolvency before the goods were purchased. We think it shows beyond any question that the goods were delivered prior to any attempt of the seller to exercise his right of stoppage *in transitu.* Of course it cannot be contended that goods are in transit after they have been delivered to the buyer, and the right of stoppage *in transitu* did not exist at the time that the appellant sought to exercise it, for the reason that the goods had already been delivered, and were not at the time in transit.

It is next contended by the appellant that, under § 1198 of Crawford & Moses' Digest, it had a right to off-set any amount that it might owe as against the indebtedness existing on the part of the deceased to the appellant. The section referred to authorizes a set-off in suits by executors or administrators of debts against their testators or intestates and owing to the defendant at the time of his death. But it does not authorize one who has sold goods to a person to go to the place of business of the buyer and retake the property which has been delivered, and then, when sued for the value of the property so retaken, set-off debts due to the seller in an action of this kind. If that were true, any seller could go to the place of the business of a buyer, after the buyer's death, and repossess himself of property that had been sold, and

then, when sued for the value of the goods so taken, set-off a debt due from the deceased.

If the seller, after the death of the buyer, could retake property that had been delivered during the lifetime of the buyer on the same day, he could retake it the next day, or the next month, or any time thereafter before the statute of limitations prevented it.

These are the only questions raised by appellant in its brief, and the trial court properly submitted every question raised by appellant to the jury. The jury was fully instructed, not only on the question of stoppage *in transitu* or the time of delivery, but also with reference to accord and satisfaction.

The verdict of the jury is supported by substantial evidence; there is no error in the instructions of the court, and the judgment is therefore affirmed.